EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JORGE TIRADO DE SANTOS, acusado y apelante.

*Número:* CR-64-10          *Resuelto:* 6 de noviembre de 1964

*José M. Cueto,* abogado del apelante; *J. B. Fernández Badillo, Procurador General,* y *Peter Ortiz, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

El acusado-apelante fue convicto por un jurado del delito de tentativa de violación. No hay duda de que nuestras leyes proveen para y castigan dicho delito en grado de tentativa, *Pueblo* v. *Marrero,* 57 D.P.R. 713, 715 (1940).

La tentativa de violación en este caso no ocurrió con motivo de una aventura amorosa corriente, sino en ocasión en que una señora utilizó un taxi para ir de un lugar a otro.

El acusado-apelante es el conductor del taxi; la perjudicada era la pasajera.

El apelante señala ante nos los siguientes dos errores:

1. "Erró el Tribunal al declarar culpable al acusado por la prueba presentada por el delito de tentativa de violación."

2. "Erró el Tribunal al no permitir que el policía Ernesto Colón declarara sobre las manifestaciones hechas por el acusado al ser interrogado en el cuartel de la policía sobre los hechos del caso."

■ La prueba demuestra lo siguiente: Raúl Morales y Bárbara Leisey fueron a una fiesta de cumpleaños a casa de Luz Marta Caraballo en Puerto Nuevo. Cumplía años un niño hijo de Luz Marta, a quién Morales y Bárbara le llevaban un regalo. Morales y Bárbara no son, o no eran para esa época, casados pero vivían juntos como marido y mujer. Residían en la Urbanización Los Angeles. Morales es músico y para esa fecha trabajaba tocando piano en el club nocturno Mona Lisa. Morales se tuvo que ir temprano de la fiesta, a las 9:45 P.M., porque tenía que ir a su trabajo. Le dijo a Bárbara que se quedara un rato en casa de Luz Marta para que disfrutara de la fiesta y dispuso para que el taxi la llevase más tarde al club Mona Lisa a unirse a él. El acusado también estaba invitado a la fiesta. Es amigo de Luz Marta y su familia desde hace años. Pretendía a una hermana de Luz Marta y visita esa casa con frecuencia. Morales declaró que él sabía que el acusado era conductor de taxi y al irse de la fiesta le dijo a aquél: "Me hace el favor y me lleva a la señora adonde yo trabajo y entonces pasa y yo le pago allá," a lo que el acusado contestó que estaba bien. Morales se fue en su carro para su trabajo. El acusado sacó a bailar a Bárbara y ésta bailó con él una pieza. Bailó otra con el niño que cumplía año. Declaró Bárbara que solamente bailó esas dos veces en la fiesta. Como a las 11:30 P.M. Bárbara quiso irse para reunirse con Morales en el lugar de trabajo de éste. Salió en el taxi conducido por el acusado y le indicó que la llevase al

club Mona Lisa. Bárbara se sentó en el asiento delantero del carro. En el contrainterrogatorio ella explicó que lo hizo porque el acusado le había sido recomendado como una persona de confianza. (T.E. pág. 23.)

Como en esta relación llegamos ahora a los sucesos clave, vamos a hacer la síntesis siguiendo lo más posible las palabras de la testigo. De sus contestaciones se pueden inferir las preguntas, las cuales no son esenciales para entender el relato.

Le preguntan a la testigo si le indicó al conductor del taxi adónde ella quería ir. Contestó que sí, que le dijo que la llevase al Mona Lisa. Explica que se sentó en el asiento delantero porque el conductor "estaba recomendado por la señora de la casa." Salieron. Cuando ella se dio cuenta de que no estaban en la carretera camino del club Mona Lisa le preguntó al conductor que adónde la llevaba. Éste contestó "Vamos a pasear un ratito." Ella dijo que no, que iban para el Mona Lisa. Entonces el conductor comenzó a poner sus manos sobre las piernas de ella. Tomó una mano de ella a la fuerza y la puso sobre el miembro de él. Ella estaba fumando y declara que "le dije no hacer eso porque lo iba a quemar." Entonces "yo me puse retirada," declaró. Él se acercó hacia ella y le metió una mano por dentro de su ropa. Ella por la fuerza sacó la mano. Llegaron a un sitio donde estaba muy obscuro. Salieron unas personas y el acusado le dijo "Dame un cuartito, dame un cuartito." Ella protestó "¡Que no, que no, que no!" Entonces el acusado condujo el carro fuera de allí. Ella cree que iba por la carretera de Guaynabo. Entonces volvió a protestar de que ésa no era la carretera para ir al Mona Lisa. El conductor continuó y más adelante detuvo el vehículo en una entrada que había una residencia; lo entró en riversa. Ella creyó que iba a virar para llevarla al Mona Lisa pero, por el contrario, el acusado apagó las luces y se bajó del carro. Vino al lado de la testigo, abrió la puerta delantera y la sacó a la fuerza del vehículo. Quiso entrarla por la

fuerza al asiento de atrás del carro. Le decía "entra, entra" y forcejearon. Ella resistía y con motivo de la lucha se lastimó una rodilla. La testigo vio que por la carretera pasaban carros y comenzó a gritar "para que alguien me escuchara y viniera, pero cada vez que yo gritaba él me tapaba la boca con la mano, así." Ella continuó la resistencia física y gritaba. Finalmente él dijo "Está bien, vamos." Cuando estaban cerca del club Mona Lisa el carro se detuvo en la luz de tránsito y el motor se le apagó. Ella aprovechó la ocasión para salirse del carro e irse corriendo.

La testigo se dirigió al Mona Lisa a relatarle a Morales lo que le había ocurrido. Morales la vio, a través del cristal del establecimiento, cuando ella llegaba y la describe así: "La ví a ella toda despeinada, llorando, botando sangre por la boca y todo estrujado el traje." Le preguntan qué hizo y continuó declarando Morales: "Me paré del piano y fuí afuera y le pregunté, '¿Qué te pasa?' Dijo, 'Ese hombre, que me ha estropeado.' La traté de calmar porque estaba muy excitada. La senté en el carro mío y le llevé un vaso de agua. Entonces le dije al 'manager' Pérez, 'Permítame llevar a mi señora a casa.'" Continúa relatando Morales que Bárbara estaba temblando y llorando, que él le dijo "Cálmate, después que te calmes me dices."

En el contrainterrogatorio la testigo reiteró que el acusado la sacó a la fuerza del carro; que la quiso hacer entrar al asiento de atrás también a la fuerza pero que ella resistió; que en esos momentos ella recibió un golpe y comenzó a gritar; que él la maltrató y le tapaba la boca; que él no consiguió violarla porque ella "estaba luchando."

Los testigos de cargo fueron la perjudicada, Raúl Morales y el policía Ernesto Colón. El policía investigó los hechos cuando la querella llegó a él. Declaró que vio los golpes en la boca y en la rodilla de la perjudicada. La prueba de defensa consistió de la declaración de Luz Marta Caraballo y tam-

bién la defensa llamó al policía Colón. Luz Marta declaró que el esposo de Bárbara se tenía que ir a trabajar y le dijo al acusado que la llevase a la casa. Declaró que Bárbara y el acusado bailaron todo el tiempo; que Bárbara se dio varios tragos; que el acusado es amigo de ella (de Luz Marta) desde hace como dos o tres años y que visita su casa con frecuencia.

Aparentemente el jurado no le dio crédito al testimonio de Luz Marta Caraballo. El récord da la impresión de que por su amistad con el acusado quiso defenderlo. Hay suficiente base en la prueba para justificar la convicción. La tentativa, con la intención de cometer el delito y la aptitud para cometerlo, quedó demostrada. El primer error no se cometió.

■ El segundo error señalado, basado en la negativa del Tribunal a que el policía declarase sobre lo que dijo el acusado cuando el policía lo entrevistó en el cuartel, tampoco se cometió. Ésa hubiese sido evidencia consistente en declaraciones en beneficio propio (*self-serving declarations*) y estuvo bien excluida. *Galanes* v. *Galanes*, 54 D.P.R. 885, 891 (1939); *Méndez* v. *Martínez*, 24 D.P.R. 241, 248 (1916); *Herman* v. *U.S.*, 48 F.2d 479; *Busch* v. *U.S.*, 52 F.2d 79, *cert. den.* 284 U.S. 687; *State* v. *Harris*, 64 S.W.2d 256; *Barnes* v. *Com.*, 32 S.W.2d 16; 1 Wharton *Criminal Evidence*, sec. 285; Fricke, *California Criminal Evidence* (1960) pág. 141; Ortiz, 9 Rev. Jur. U.P.R. 130.

Siempre es penoso para los Tribunales imponer o confirmar sentencias penales, pero no podemos eludir nuestro deber de hacer efectivas las leyes y en este caso específico, de garantizar que las damas en Puerto Rico puedan utilizar un taxi sin riesgo de ser violadas o atacadas por el conductor del vehículo. El propio Reglamento Para Taxis de la Comisión de Servicio Público dispone que "Todo operador [de taxi] está en la obligación de observar una actitud cortés y respe-

tuosa para el público y los pasajeros que viajen en su vehículo." 27 R.&R.P.R. 72–441.

*Se confirmará la sentencia apelada.*