EL PUEBLO DE PUERTO RICO, peticionario y recurrente, *v.*
MARISOL SANTIAGO COLÓN, acusada y recurrida.

*Número:* CE-90-74     *Resuelto:* 9 de febrero de 1990

*Norma Cotti Cruz, Subprocuradora General,* y *Ricardo E. Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo; *Carmen Ana Rodríguez Maldonado,* de la *Sociedad para Asistencia Legal,* abogada de la recurrida.

## SENTENCIA

Vistos los planteamientos del Procurador General y la comparecencia de la acusada recurrida Marisol Santiago Colón, y en consideración a las disposiciones de las Reglas de Evidencia pertinentes, se expide el auto y se revoca la resolución del Tribunal Superior, Sala de San Juan, que aceptó la admisibilidad de la declaración jurada prestada por la recurrida Santiago Colón el 19 de julio de 1989 ante el Fiscal Investigador Manuel Núñez Corrada.

*Notifíquese por escrito y mediante la vía telefónica.*

Así lo pronunció y manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió opinión concurrente, a la cual se une el Juez Asociado Señor Ortiz. El Juez Presidente Señor Pons Núñez y el Juez Asociado Señor Alonso Alonso concurrieron con el resultado sin opinión escrita. El Juez Asociado Señor Rebollo López emitió opinión disidente, a la cual se unen la Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Hernández Denton.

Todos los Jueces se reservan el derecho a emitir ponencias al amparo de la Regla 4(b) del Reglamento del Tribunal Supremo de Puerto Rico, 4 L.P.R.A. Ap. I-A.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

—O—

Opinión concurrente emitida por el Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Ortiz.

Este recurso plantea la novel interrogante de si la declaración jurada tomada por el Ministerio Fiscal en la etapa investigativa a una persona subsiguientemente acusada es admisible como prueba de defensa en el juicio cuando ésta, amparándose en su derecho constitucional, opta por no declarar.

Al atisbar la solución, hemos de tomar los principios generales que empapan las reglas del derecho probatorio, inspiradas en la experiencia sobre la *conducta humana, la lógica y, sobre todo, en el sentido común,* partiendo del universo mayor al de las circunstancias y contingencias particulares. A esos efectos recordamos, como fundamento de toda interpretación jurídica en un asunto criminal o civil, el consejo de Juan Vallet de Goytisolo sobre el lugar preponderante que ha de jugar el sentido común.

El sentido común muchas veces es una apreciación sintética, en cánones de justicia natural, de la misma naturaleza de las cosas, de la realidad vital. *La interpretación que repugne a ese sentido común ha de ponernos en guardia contra ella. Generalmente será una mala aplicación del Derecho, probablemente una aplicación debida a un método equivocado.* Aconsejamos revisar entonces todos los razonamientos, volverlos a repetir y volver a analizar. El Derecho no puede llevar a un resultado absurdo ni a un resultado injusto y debemos convencernos de que cuando nos lleva a este resultado es porque hemos seguido un camino equivocado, porque hemos errado en nuestros razonamientos.

Recordemos lo dicho por Biondi. El absurdo jurídico no es el absurdo lógico, es lo injusto. Por lo demás, creo que cuando un absurdo, una injusticia se da, el absurdo jurídico es absurdo lógico también, *porque aún cuando sea perfectamente lógico en una lógica puramente formal, ha de ser ilógico para toda lógica humana, para una lógica jurídica.* (Énfasis suplido.) J. Vallet de Goytisolo, *Panorama del Derecho Civil,* 2da ed., Barcelona, Ed. Bosch, 1973, págs. 86–87.

Expongamos suscintamente el trasfondo fáctico y procesal atinente.

## I

*Trasfondo fáctico y procesal*

El 5 de julio de 1989 Samuel Llinas Torres fue muerto a consecuencia de una herida de arma blanca. El suceso acaeció en la residencia de Marisol Santiago Colón. Durante la etapa investigativa, el 19 de julio, ella compareció ante el Fiscal Manuel Núñez Corrada y —previas las advertencias legales, incluso sobre el derecho a permanecer en silencio— prestó una declaración jurada. Durante la misma estuvo acompañada por sus abogados, Julio Fontanet y Ángel Vital Vázquez. En síntesis, declaró haber sostenido serios incidentes con Llinas Torres desde antes del 5 de julio, hasta el punto que lo denunció. Relató que ese día Llinas Torres se personó a su residencia y, tras una grave discusión, él le "calló [sic.] encima", la abofeteó y la agredió con puños y patadas. Ante esa agresión, temerosa por su vida y la de sus hijos, narró:

[C]uando me estaba parando, en el escurridor había un cuchillo y yo pensé en mis hijos y temía por mi vida, vi el cuchillo y lo agarré ya que el día antes él había cogido un martillo, entonces, cuando agarro el cuchillo tiro la mano hacia atrás de mí yo sé que se lo enteré (sic), pero no ví la parte en que se lo enteré (sic), seguí corriendo con el cuchillo en la mano y él seguía detrás de mí. Entonces yo miro para atrás y lo ví caer en el pasillo del piso 11 . . . . Declaración jurada, pág. 2.

El 19 de julio fue denunciada por los delitos de homicidio e infracción al Art. 4 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 414. Previa renuncia a su derecho a vista preliminar, fue acusada en el Tribunal Superior, Sala de San Juan. El juicio comenzó a ventilarse ante Jurado presidido por el Hon. Juez Elpidio Batista Ortiz. El Ministerio Fiscal presentó siete (7) testigos, incluyendo al Fiscal Investigador Núñez Corrada. Durante la etapa del desfile de prueba de la defensa ésta solicitó, en ausencia del Jurado, que se admitiera en evidencia la declaración jurada antes aludida. El Fiscal se opuso y adujo que dicha declaración era prueba de referencia, no sujeta a ninguna de las excepciones de la regla general de exclusión.

El ilustrado foro de instancia, tras analizar los argumentos de las partes, en elaborado dictamen aceptó su admisibilidad a base de las Reglas 64(B)(1), 64(B)(5) y 65(W) de Evidencia, 32 L.P.R.A. Ap. IV. En su abono, expuso los fundamentos siguientes: que una vez la acusada Santiago Colón ejerció su derecho constitucional de no declarar, se convirtió en un testigo no disponible (Regla 64(A)(1) de Evidencia, 32 L.P.R.A. Ap. IV); que por ello no puede ser penalizada (*United States v. Henry*, 448 F. Supp. 819 (D. N.J. 1978)); que de la declaración jurada surgía que el Fiscal la contrainterrogó extensamente; que dicha declaración fue tomada a instancias del Fiscal y ella siguió sus instrucciones; que el Ministerio Fiscal conocía previamente su existencia y contenido, y sabía —o debió saber— la indisponibilidad de ella para optar al decidir no declarar (en cuanto a este extremo concluyó que, de este modo, se cumplió con el requisito de notificación previa a la parte adversa visualizado en la Regla 64(B)(5) de Evidencia, *supra*); que dicha declaración reunía suficientes garantías circunstanciales de confiabilidad, pues estaba corroborada en su totalidad por la prueba testifical y documental presentada por el Ministerio Público durante el juicio; que fue tomada a instancias del Fiscal Investigador, quien

para esa fecha ya había investigado el caso, entrevistado los testigos y visitado el lugar de los hechos, y que el día de los hechos el propio fiscal investigador envió a la señora Santiago "a que buscara ayuda en la Casa Julia de Burgos, [i]nstitución que se dedica a dar tratamiento y orientación a mujeres maltratadas". Anejo IV, pág. 13.

## II

*Consideraciones preliminares y ámbito adjudicativo*

Nuestro derecho probatorio aspira al "descubrimiento de la verdad en todos los procedimientos judiciales". Regla 2 de Evidencia, 32 L.P.R.A. Ap. IV. Sin embargo, la consecución de este fin básico no es atrecho fácil, sino camino lleno de obstáculos que en innumerables ocasiones nos conduce a situaciones conflictivas en que determinada evidencia —aun cuando sea pertinente— es inadmisible en los tribunales. Ilustra clásicamente lo anterior, la norma general de exclusión sobre *prueba de referencia*, a saber, "una declaración aparte de la que hace el declarante al testificar en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado". Regla 60(C) de Evidencia, 32 L.P.R.A. Ap. IV. Véase, además, Regla 61 de Evidencia, 32 L.P.R.A. Ap. IV.

Su inadmisibilidad está atada a los riesgos inherentes relativos a cuatro (4) factores humanos: narración, percepción, recuerdo del acontecimiento y sinceridad del declarante. *Pueblo v. García Reyes*, 113 D.P.R. 843, 852–853 (1983). Claro está, no todo lo que un tercero manifiesta a un testigo es prueba de referencia inadmisible. Para que lo sea, "la manifestación debe tener algún contenido *que pueda ser cierto o falso*, y que dicha manifestación, al ser trasmitida al tribunal por el testigo que la oyó, *se produzca para probar que lo manifestado es cierto*". (Énfasis suplido.) *Pueblo v. Rivera Burgos*, 106 D.P.R. 528, 531 (1977). Véase E. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1985, Vol. 1, Cap. VIII, pág. 278.

En el caso ante nos, como veremos, se trata de declaraciones de índole más bien exculpatorias que la defensa pretende utilizar como prueba *sustantiva* a pesar de que la acusada Santiago Colón no está dispuesta a declarar. De entrada, debemos dejar sentado el carácter de prueba de referencia de dicha declaración bajo la Regla 60 de Evidencia, 32 L.P.R.A. Ap. IV (*Pueblo v. Rivera Burgos*, supra) sujeta, claro está, a la *Regla general de exclusión*, 32 L.P.R.A. Ap. IV, R. 61. Como, además, es una declaración prestada por una *parte*, según la Regla 62 de Evidencia, 32 L.P.R.A. Ap. IV, no sería admisible por no ofrecerse en su *contra*, sino a su favor. Propiamente no es una "admisión" —Regla 62(A) de Evidencia, 32 L.P.R.A. Ap. IV— sino una declaración en *beneficio propio* (*self-serving hearsay*) que no tiene cabida en la citada Regla 62. Por otro lado, según expondremos oportunamente, su contenido tampoco satisface ninguna de las situaciones visualizadas en la Regla 65 de Evidencia, 32 L.P.R.A. Ap. IV. Tampoco son aplicables las excepciones recogidas en los subincisos (2), (3) y (4) de la Regla 64(B) de Evidencia, 32 L.P.R.A. Ap. IV: peligro de muerte, contra interés, o sobre historial personal o familiar.

Reducido así inicialmente el universo adjudicativo, comencemos con las Reglas 63 y 64(B)(1) de Evidencia, 32 L.P.R.A. Ap. IV.

## III

*Inadmisibilidad bajo la Regla 64(B)(1)*

Según indicado, el tribunal de instancia admitió la declaración jurada al amparo, en primer lugar, de la Regla 64(B)(1) de Evidencia, *supra,* después de concluir que la acusada Santiago Colón era una "testigo no disponible". Coincidimos en que, aunque sea una ficción o paradoja —ya que físicamente ella estaba presente en el tribunal— por operación de la Regla 64(A)(1) de Evidencia, 32 L.P.R.A. Ap. IV, e

imperativo del derecho constitucional a no incriminarse (Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1), a todos los fines legales era una "testigo no disponible". Esa cualidad no desaparece por su condición de "parte" en un proceso criminal.

La Regla 63 de Evidencia, *supra*, dispone: "Es admisible como excepción a la regla de prueba de referencia una declaración anterior de un testigo que está presente en el juicio o vista y sujeto a ser contrainterrogado en cuanto a la declaración anterior, siempre que dicha declaración fuere admisible de ser hecha por el declarante declarando como testigo."

Más adelante, la Regla 64(B)(1) de Evidencia, *supra*, dispone:

> (B) Cuando el declarante *no está disponible como testigo,* es admisible como excepción a la regla de prueba de referencia:
>
> (1) *Testimonio anterior: Un testimonio dado como testigo en otra vista o una deposición tomada conforme a derecho del mismo u otro procedimiento,* si es ofrecido contra una persona que en la ocasión en que se hizo la declaración ofreció la misma para su beneficio o tuvo la oportunidad de contrainterrogar al declarante con un interés y motivo similar al que tiene en la vista. (Énfasis suplido y en el original.)

Al examinarlas conjuntamente advertimos la intrínseca relación entre ambas: *se trata de categorías excluyentes.* La Regla 63 de Evidencia, *supra,* se refiere al caso cuando el "declarante" —persona que hizo la declaración que constituye prueba de referencia, Regla 60(B) de Evidencia, 32 L.P.R.A. Ap. IV— está dispuesto a testificar en el juicio y someterse al contrainterrogatorio de la parte adversa. *Pueblo v. Esteves Rosado,* 110 D.P.R. 334 (1980). Por su parte, la Regla 64(B)(1) de Evidencia, *supra, supone, para su aplicación,* justamente lo contrario: que el declarante no está disponible para prestar testimonio y, por ende, someterse al contrainterrogatorio del adversario. Repetimos, en puridad,

estamos ante unas categorías *excluyentes*. Sobre este extremo debemos puntualizar la razón fundamental de la exclusión de prueba de referencia, a saber, que la parte adversa no ha tenido la oportunidad de contrainterrogar al declarante y explorar los peligros (de *hearsay*) inherentes a los factores antes mencionados. *Pueblo v. García Reyes*, supra.

Si la parte adversa tiene o ha tenido oportunidad de contrainterrogar al declarante, se desvanece la razón de ser de la regla de exclusión de prueba de referencia y debe admitirse la declaración. *Si está dispuesto a declarar en el juicio o vista, y a someterse al contrainterrogatorio de la parte adversa, entonces no hay menoscabo significativo al derecho de confrontación y la declaración se admite bajo la Regla 63 de Evidencia, supra, independientemente de su contenido, si fue oral o escrita, con o bajo su juramento, y con o sin contrainterrogatorio.*(1)

En esta última situación el contrainterrogatorio se satisface, no al momento de la declaración *sino en el tribunal*, por razón de que el declarante está dipuesto a testificar y a ser contrainterrogado por la parte adversa. En contraste, la Regla 64(B)(1) de Evidencia, *supra*, se activa una vez satisfecho el supuesto del apartado (A) de la Regla 64 del mismo cuerpo de reglas, 32 L.P.R.A. Ap. IV, esto es, la no disponibilidad del declarante para testificar y someterse al contrainterrogatorio de la parte adversa.

De lo hasta aquí expuesto aflora una importante conclusión: *es el tipo de declaración lo que justifica la admisibilidad bajo la Regla 64(B)(1) de Evidencia, supra*. Sólo son admisibles aquellas declaraciones prestadas, sujetas a contrainterrogatorio, en una *deposición*, un *juicio* o una *vista anterior*.

---

(1) En *Pueblo v. Esteves Rosado*, 110 D.P.R. 334 (1980), reconocimos las diferencias entre nuestra liberal Regla 63 de Evidencia, 32 L.P.R.A. Ap. IV, y la concordante federal, 28 U.S.C. R. 801(d)(1).

Conciente la sala de instancia de ello, en su resolución adujo:

De la lectura de la declaración jurada tomada por el fiscal surge que éste contrainterrogó extensamente a la acusada sobre lo declarado por ésta y otros asuntos relacionados. Dicha declaración es una jurada y fue prestada, según la misma prueba de cargo, a instancia y solicitud del fiscal. La acusada siguió las instrucciones del fiscal. Dicha declaración fue tomada en el Centro Metropolitano de Denuncias. Es una disposición [sic.](2) tomada de acuerdo a derecho.

Erró en su análisis dicho foro. Nos parece claro, en primer lugar, y no obstante las características comunes que puedan existir entre ambas, que procesal y evidenciariamente *una declaración jurada no es lo mismo que una deposición*. Como derivado de esta premisa, la declaración brindada por la acusada Santiago Colón es la clásica declaración jurada que toma el Ministerio Público durante el trámite investigativo de un caso. Al observar los análisis y los presupuestos que condujeron a la redacción y aprobación de las Reglas de Evidencia —en particular lo relativo a la Regla 64(B)(1), *supra*— notamos que la atención se concentró más en el aspecto del testimonio brindado en *vista preliminar* que en las *deposiciones*. Véase *Primer examen de las Reglas de Evidencia de 1979: comentarios y recomendaciones*, Secretariado de la Conferencia Judicial, Décimotercera Sesión Plenaria, diciembre de 1986.

Por tal motivo, y por su valor persuasivo, hemos de dirigir nuestra atención al lenguaje contenido en la disposición evidenciaria equivalente en el ámbito federal, la Regla 804(b)(1), la cual dispone:

*(b) Excepciones de prueba de referencia.* Los casos siguientes no están excluidos de la regla de prueba de referencia si el declarante no está disponible como testigo:

---

(2) Suponemos que la palabra correcta es *deposición*.

*(1) Testimonio anterior.* Testimonio dado como testigo en otra vista del mismo o de otro procedimiento, o en una deposición tomada conforme a derecho en el curso del mismo o de otro procedimiento, si la parte contra la cual se ofrece en esta ocasión, o en una acción o procedimiento civil que sea predecesora en interés, tuvo oportunidad y motivo similar para descubrir el contenido del testimonio mediante examen directo, contrainterrogatorio o redirecto. (Traducción nuestra.) 28 U.S.C. R. 804(b)(1).

Se observa, pues, que con ligeras variantes el texto de la Regla federal 804(b)(1), *supra*, es idéntico a nuestra Regla 64(B)(1) de Evidencia, *supra*, y limita su órbita de acción a aquellas circunstancias en que el testimonio se ha brindado en otra vista o en una deposición. En sus comentarios sobre la regla federal, Weinstein señala los atributos relacionados que justifican este enfoque —el testimonio es bajo juramento, se reduce a escrito en circunstancias que requieren gran cuidado y exactitud, y existe una adecuada oportunidad para contrainterrogar— *los cuales distinguen tanto a la vista judicial como a la deposición de otros métodos o procedimientos para obtener declaraciones.* 4 *Weinstein's Evidence* Sec. 804(b)(1)[01] (1989).

Respecto a la deposición y su entorno procesal, a renglón seguido dicha fuente expone:

La Regla 32(a)(3) de las Reglas federales de Procedimiento Civil y la Sección 3503 del Título 18 del Código federal, unidos a la Regla 15 de las Reglas de Procedimiento Criminal, gobiernan el uso de deposiciones en casos civiles y criminales. *Estos por sí mismos crean* una serie de excepciones a la regla de prueba de referencia en el caso de deponentes que no estén disponibles, la cual se continúa en la Regla 802. Tal como fuera promulgada por el Tribunal Supremo, la Regla 804(b)(1) puede aplicarse a deposiciones sólo en la medida en que sean ofrecidas en un procedimiento distinto del que se hayan tomado. El Congreso extendió la regla también a deposiciones tomadas dentro del mismo procedimiento. (Énfasis suplido y traducción nuestra.) *Weinstein's*, supra, pág. 804-71.

Evidentemente, *la formalidad y certeza que rodea a ambos tipos de procedimientos —vista judicial y deposición— inciden decisivamente en permitir los testimonios allí brindados como excepciones a la regla general de exclusión de prueba de referencia cuando el declarante adviene testigo no disponible en el procedimiento subsiguiente.*

Si el testimonio previo es ofrecido bajo la excepción a la prueba de referencia de testimonio anterior, entonces es ofrecido como un sustituto al testimonio dado por la persona en corte abierta; y la política favorecedora de la presencia personal requiere que la no disponibilidad del testigo sea demostrada antes de que se acepte este sustituto. (Énfasis suplido y traducción nuestra.) E.W. Cleary, *McCormick on Evidence*, 3ra ed., Minnesota, Ed. West Publishing Co., 1984, T. 10, Cap. 25, Sec. 256, pág. 762.

Ese respaldo judicial al uso de *deposiciones* —como excepción a la regla general de exclusión de prueba de referencia— ha permitido la presentación de este tipo de evidencia en casos criminales aun cuando se originaron en pleitos civiles anteriores. *United States v. Vecchiarello*, 569 F.2d 656, 664 (Cir. D.C. 1977); *United States v. Maturo*, 536 F.2d 427, 429 (Cir. D.C. 1976).

Nuestra actual Regla 64(B)(1) de Evidencia, *supra*, es un amplio recipiente que recoge los conceptos y las experiencias acumuladas por su homónima en la esfera federal. Aquí hemos reconocido, igualmente, que una *deposición* tomada a un declarante que luego adviene no disponible es admisible como prueba sustantiva. *Pueblo v. Ríos Nogueras*, 111 D.P.R. 647, 653–654 (1981); *Pueblo v. Ruiz Lebrón*, 111 D.P.R. 435, 439–440 (1981); Chiesa, *op. cit.*, pág. 349. Y más reciente, en 1983, la Asamblea Legislativa modificó la Regla 94 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, a los fines de extender y permitirle al Ministerio Público, después de haberse presentado la denuncia o acusación, el derecho a tomar deposiciones de testigos con el propósito de preservar

un testimonio. Esta regla dispone que la deposición procederá previa autorización del tribunal tan sólo "[p]or circunstancias excepcionales y en interés de la justicia", y podrá usarse como evidencia sustantiva en el juicio cuando el testigo deponente no esté disponible para declarar.

Ante estos antecedentes, ciertamente la declaración tomada en fiscalía, aun bajo juramento, no es el tipo de declaración vislumbrado en la Regla 64(B)(1) de Evidencia, *supra*, y su concordante federal, Regla 804(b)(1), *supra*. El argumento fundado en que debido a que fue el Fiscal quien la tomó y pudo hacer preguntas a su antojo —y así cuestionar, aclarar o cualificar las respuestas— satisface los requisitos de la Regla 64(B)(1) de Evidencia, *supra, es más aparente que real.* Expliquémonos.

*Primero,* una persona acusada, lo mismo en calidad de sospechoso o arrestado, tiene el derecho absoluto a no declarar y guardar silencio cuando es interrogada por el Estado. *Pero en la etapa investigativa, fuera del tribunal, está irrestrictivamente en libertad de dar la versión favorable que la plazca de los hechos —incluso una acomodaticia— y simultáneamente, ante preguntas difíciles o incriminatorias, invocar el privilegio contra la autoincriminación.* Sin embargo, una vez denunciada o acusada, si en la vista o en el juicio renuncia a su derecho a no declarar y opta por testificar para dar una versión exculpatoria, *renuncia a ese privilegio y está obligada en el contrainterrogatorio del Fiscal a contestar cualesquiera preguntas pertinentes relacionadas con las materias cubiertas en su examen directo.* A fin de cuentas, "un acusado renuncia a su derecho a no incriminarse cuando presta testimonio a su favor y está sujeto a las mismas reglas que cualquier testigo . . .". *Pueblo v. Álvarez Rosario*, 108 D.P.R. 112 , 118 (1978).

*Segundo,* en sus correctas coordenadas (las reglas de evidencia y su conexión con el ámbito del derecho constitucional a no incriminarse), y como norma general, todo acusado que

se sienta a declarar renuncia a ese privilegio, al menos con referencia a los asuntos sobre los que declaró en el examen directo y a aquellos relacionados con materia pertinente sobre los hechos que se le imputan, aunque no hubieran sido objeto del directo. No obstante, no renuncia a preguntas que sólo afectan credibilidad, como lo serían aquellas sobre delitos anteriores, actos específicos de mendacidad y otros. A modo de ejemplo, si un acusado opta por declarar y da una versión exculpatoria de los hechos, y en el contrainterrogatorio el Fiscal le pregunta, por ejemplo, si hizo falsas declaraciones en su anterior planilla de contribución sobre ingresos —medio legítimo de impugnación según la Regla 45(1)(B) de Evidencia, 32 L.P.R.A. Ap. IV— puede invocar el privilegio contra su autoincriminación en virtud de lo dispuesto en la Regla 44(C) de Evidencia, 32 L.P.R.A. Ap. IV: "Un testigo no renuncia al privilegio contra la autoincriminación cuando es examinado en torno a materia que afecta únicamente a cuestiones de credibilidad."(3)

Según los principios que rigen la admisión de prueba de referencia, el contrainterrogatorio a que es sometido un acusado cuando declara en el tribunal *no es equivalente ni igual* a la situación que configura una declaración jurada tomada ante el Fiscal. Es irreconciliable con *la búsqueda de la ver-*

---

(3) Igual enfoque prevalece en virtud de la Regla federal 608, *in fine*, con la variante de que incluye *expresamente* al acusado. "El testimonio brindado, bien sea por el acusado o por cualquier testigo, no opera como una renuncia al privilegio de éstos a la no autoincriminación cuando se les examina respecto a materias relacionadas exclusivamente con su credibilidad." (Traducción nuestra.) 28 U.S.C. R. 608.

Cuando el contrainterrogatorio se refiera a asuntos que van más allá de la credibilidad, esto es, que se refiera a los hechos imputados, el acusado está obligado a responder, so pena de que se elimine lo que declaró en el examen directo. Véanse: 3 *Weinstein's Evidence* Sec. 608[07] (1987); 3 *Louisell and Muller, Federal Evidence* Sec. 310; *Brown v. United States*, 356 U.S. 148 (1958); *Tucker v. United States*, 5 F.2d 818 (8vo Cir. 1925); *United States v. Hearst*, 563 F.2d 1331 (9no Cir. 1977); *United States v. Beechum*, 582 F.2d 899 (5to Cir. 1978); *Rogers v. United States*, 340 U.S. 367 (1951).

*dad* —premisa mayor que apuntala todo nuestro derecho probatorio— que un sospechoso, arrestado o acusado pueda brindar toda posible versión exculpatoria mientras se ampara en el privilegio contra la autoincriminación ante preguntas comprometedoras o incómodas, y que concluyamos que tales declaraciones son admisibles como prueba de referencia en el juicio a pesar de que se niegue a declarar. Por otro lado, es totalmente compatible el interés de buscar la verdad y la defensa de los derechos de un acusado con el de exigirle (cuando pretende usar a su favor prueba de referencia consistente de sus declaraciones extrajudiciales, que no son admisibles bajo las Reglas 64(B)(2) a (4) ni bajo la Regla 65 de Evidencia, 32 L.P.R.A. Ap. IV) que se someta al rigor del contrainterrogatorio en el juicio.

Finalmente, debemos recordar que no importa cuán voluntarias y confiables puedan resultar ciertas declaraciones de un acusado en la etapa investigativa, el Fiscal no puede utilizarlas como admisiones sin antes satisfacer los requerimientos del privilegio contra la autoincriminación, según *Miranda v. Arizona*, 384 U.S. 436 (1966), e incorporados en nuestra jurisdicción en *Rivera Escuté v. Jefe Penitenciaría*, 92 D.P.R. 765 (1965), y su progenie. En otras palabras, el Ministerio Público no puede contar con las declaraciones de un acusado, salvo que éste renuncie a los beneficios del expandido derecho contra la autoincriminación. No puede ser obligado a declarar ni en la etapa investigativa ni en el juicio. Si aún así se le permitiera utilizar como prueba sus declaraciones extrajudiciales en beneficio propio —sin tener que someterse al contrainterrogatorio del Fiscal en el tribunal— se rompería el balance establecido jurisprudencialmente del privilegio contra la autoincriminación.(4)

_____

(4) En *Moran v. Burbine*, 475 U.S. 412, 426 (1986), el más alto foro federal expuso: "interpretar a *Miranda* de forma que requiera a la policía en cada oca-

En resumen, resolvemos que la declaración jurada prestada por la acusada Santiago Colón al Fiscal durante la etapa investigativa no es susceptible de ser admitida bajo la Regla 64(B)(1) de Evidencia, *supra*. La Asamblea Legislativa determinó que no existía razón para incluir este tipo de declaración por no contar con las garantías de formalidad y certeza inherentes a las vistas judiciales y a las tomas de deposición. El que en el caso de autos el Fiscal le formulara varias preguntas después de ella haber narrado los hechos que presuntamente motivaron la muerte de Llinas Torres, no le otorga el grado de formalidad de una *deposición* conforme la citada Regla 94 de Procedimiento Criminal.

## IV

### *Inaplicabilidad de las Reglas 64(B)(5) y 65(W)*

En su dictamen, el foro de instancia concluyó que "aún asumiendo para beneficio de discusión que no fuera admisible [la declaración jurada] por la Regla 64(B)(1), sí lo sería por la Regla 64(B)(5) y/o por la Regla 65(W) de las de Evidencia de Puerto Rico (1979)".[5] Anejo IV, pág. 4. Nuevamente incidió.

La Regla 64(B)(5) de Evidencia, *supra*, reconoce, ante una situación de testigo no disponible, la admisibilidad de:

Una declaración con suficiente garantía circunstancial de confiabilidad si se determinare que:

(i) tiene mayor valor probatorio, en relación al punto para lo que se ofrece, que cualquier otra evidencia que el proponente pudiera conseguir mediando esfuerzo razonable y

---

sión informar al sospechoso de los esfuerzos de localizarlo de un abogado provocaría un cambio sustancial y, creemos inapropiado en el delicado balance alcanzado en esa decisión." (Traducción nuestra.)

[5] Si bien las Reglas 64(B)(5) y 65(W) de Evidencia, 32 L.P.R.A. Ap. IV, son de idéntico lenguaje, nos abstendremos de hacer ulterior alusión a esta última toda vez que sólo entra en operación en situaciones en que el testigo *está disponible para declarar*.

(ii) el proponente notificó a la parte contra quien la ofrece, con razonable anterioridad, su intención de ofrecer en evidencia tal declaración informándole sobre los particulares de ésta, incluyendo nombre y dirección del declarante.

Este texto es básicamente idéntico al de la Regla 804(b)(5) de Evidencia federal, 28 U.S.C. Al aprobarla, el Congreso hizo claro que su aplicación se limitaría a "muy raras y excepcionales situaciones". T. González, *Excepciones residuales de las reglas de prueba de referencia*, LVI (Núm. 4) Rev. Jur. U.P.R. 611, 614 (1987). Su propósito fue atender situaciones no previstas por el ordenamiento evidenciario pero que por sí mismas poseyeran suficientes indicios de confiabilidad como para ameritar su admisión por el tribunal. Chiesa, *op. cit.*, pág. 361; Cleary, *op. cit.*, T. 10, Cap. 33, Sec. 324.1, pág. 907. La admisibilidad de evidencia bajo esta regla requiere del proponente el estricto cumplimiento de tres (3) requisitos, a saber: (1) que la declaración posea garantías suficientes a las de las excepciones ya reconocidas; (2) que la misma posea un valor probatorio superior —en lo que al punto por el cual se ofrece respecta— que cualquier otra evidencia que el proponente razonablemente pueda ofrecer, y (3) que éste notifique con razonable antelación a la parte contra la cual se ha de ofrecer, incluyendo las particularidades de la misma. Chiesa, *op. cit.*, pág. 361; González, *supra*, pág. 621; Clearly, *op. cit.*, Sec. 324.1, págs. 908–909.

El concepto de "situaciones no previstas" por el legislador se circunscribe a situaciones especiales análogas a las que aparecen en los incisos (1), (2), (3) y (4) de la Regla 64(B) de Evidencia, *supra* (testimonio anterior; declaraciones en peligro de muerte; declaraciones contra interés, y declaraciones sobre historial personal o familiar). Éstas, por propia naturaleza, poseen atributos o garantías de confiabilidad que parten del conocimiento y de la experiencia sobre la conducta humana o de las circunstancias particulares en que tienen lugar. *Una declaración jurada necesariamente no goza*

*de estos atributos.* En primer lugar, el que sea jurada no significa que deje de ser prueba de referencia. Chiesa, *op. cit.*, pág. 283. En *segundo lugar*, la toma de una declaración jurada es un asunto tan *común y rutinario* que difícilmente puede estar comprendida dentro de una "situación no provista", a tono con aquellos asuntos tipificados en las reglas. Por ende, si la Asamblea Legislativa hubiera interesado incluir, dada su alta previsibilidad, las situaciones en que se produce una declaración jurada por el Ministerio Fiscal en un procedimiento *ex parte*, es de suponer que le hubiese concedido un sitial expreso junto a las demás instancias vislumbradas en la Regla 64(B) de Evidencia, *supra*. Troadio González arriba a esta misma conclusión al expresar lo siguiente:

> Es [pertinente], además, señalar lo dicho por el profesor Ernesto L. Chiesa en su Práctica Procesal Puertorriqueña en el sentido de que si el Tribunal Supremo o la legislatura hubieran querido la admisibilidad de declaraciones juradas ante el fiscal prestadas por un testigo no disponible, lo habrían establecido así en un apartado separado en la regla. No se puede argüir que se trata de una declaración no susceptible de ser anticipada por el legislador, porque la misma es ordinaria, muy bien conocida por los legisladores. Por tanto, no existía excusa para no haberla incluido expresamente si ese hubiera sido el deseo del legislador o del Supremo, lo que la descualifica para la R-65(B)(5). (Escolios omitidos.) González, *supra*, pág. 617.

Y *Pueblo v. Hernández Osorio*, 112 D.P.R. 182, 202 (1982) —opinión concurrente— citada con aprobación posteriormente en *Pueblo v. De Jesús Ayuso*, 119 D.P.R. 21 (1987), explica así el alcance de estas cláusulas:

> No creemos que la rutinaria declaración jurada que prestan los testigos de cargo a los fiscales investigadores sea la evidencia visualizada en la Regla 64(B)(5). Esta regla se refiere a *situaciones no contempladas por el legislador.* No podemos atribuirle a este Tribunal Supremo, como tampoco a la Asamblea Legislativa —al elaborar las reglas de evidencia— desco-

nocimiento de la práctica habitual de los representantes del Ministerio Fiscal de tomar declaraciones juradas a testigos en la etapa investigativa de un crimen. *Se trata de una rutina tan básica que difícilmente podríamos sostener que no fuera susceptible de ser contemplada o visualizada y, por ende, incluida expresamente en el inventario de las excepciones.* (Énfasis suplido.)

En tercer lugar, en buena lógica no puede seriamente sostenerse que una declaración exculpatoria de un acusado —con el beneficio del privilegio contra la autoincriminación para no contestar ninguna pregunta perjudicial— intrínsecamente tiene mayor valor probatorio que cualquiera otra disponible para la defensa sin que tenga garantías circunstanciales de confiabilidad *similares* a las que sirven de fundamento a las excepciones expresamente reconocidas en la regla.

Es correcto que *"en algunas situaciones excepcionales,* una declaración anterior prestada durante la etapa investigativa por un testigo no disponible el día del juicio es admisible bajo la Regla 64(B)(5) de Evidencia si existen suficientes garantías circunstanciales de su confiabilidad, aunque no hubiera habido oportunidad de contrainterrogarlo". (Énfasis suplido.) *Pueblo v. Ríos Nogueras,* 114 D.P.R. 256, 264 (1983). Aparte de que ya señalamos que una declaración jurada no es por sí sola acreedora de la cláusula residual, en la de autos notamos que, excepto por algunas preguntas formuladas al final por el Fiscal, la misma constituye una narración hecha por la acusada Santiago Colón de los eventos supuestamente acaecidos que culminaron con la muerte de Llinas Torres en un acto que, según su versión, parece más bien un caso fortuito ("cuando agarro el cuchillo tiro la mano hacia atrás de mí yo sé que se lo enter[r]é, pero no ví la parte en que se lo enter[r]é", Anexo III, pág. 6) o, a lo sumo, un acto en defensa propia ("cuando me estaba parando, en el escurridor había un cuchillo y yo pensé en mis hijos y temía por mi

vida", Anexo III, pág. 6). De las citadas expresiones y del cuerpo de la declaración en general se aprecia un curso justificativo que tiende a colocar la misma en el ámbito de las declaraciones en beneficio propio (*self-serving declarations*), *lo cual por sí sólo justificaría su exclusión. Pueblo v. Tirado de Santos*, 91 D.P.R. 210, 214 (1964), jurisprudencia y autoridades allí citadas; *Pueblo v. Andrades González*, 83 D.P.R. 849, 854–855 (1961).[6]

Adicionalmente, cabe notar que la Regla 64(B)(5) de Evidencia, *supra*, o cláusula residual, debe verse en conjunto con la Regla 19 de Evidencia, 32 L.P.R.A. Ap. IV,[7] a los fines de determinar si procede su exclusión, no obstante su valor probatorio, *a causa de su efecto perjudicial superior en el procedimiento*. González, *supra*, pág. 623. Al comentar sobre la interacción de ambas reglas equivalentes en el ámbito federal (Reglas 804(b)(5) y 403), *Weinstein's*, supra, en la pág. 804-187 nos orienta así:

La Regla 804(b)(5), al igual que la Regla 803 (24) está sujeta a lo dispuesto en la Regla 403. Aun cuando estén presentes las garantías circunstanciales de confiabilidad y el excluir la declaración puede resultar en que se carezca de evidencia pertinente sobre el punto, la Regla 403 requiere la exclusión de la misma si el valor probatorio de la declaración es opacado sustancialmente por los peligros de prejuicio y confusión. Por supuesto, mientras mayor sea la necesidad y más confiable sea la evidencia, mayor será el valor probatorio de la prueba de refe-

---

[6] Téngase en cuenta, además, que "[n]o se trataba de manifestaciones espontáneas y contemporáneas con la ocurrencia del suceso". *Pueblo v. López Ramos*, 96 D.P.R. 699, 703 (1968).

[7] "Evidencia pertinente puede ser excluida cuando su valor probatorio es de poca significación en relación a cualesquiera de estos factores:
"(a) Peligro de causar perjuicio indebido
"(b) probabilidad de confusión
"(c) desorientación del jurado
"(d) dilación de los procedimientos
"(e) innecesaria presentación de prueba acumulativa." 32 L.P.R.A. Ap. IV R. 19.

rencia. Del mismo modo, el prejuicio y la confusión deben ser sustanciales para que amerite la exclusión. (Traducción nuestra.)

Es evidente, pues, que para invocar con éxito la Regla 64(B)(5) de Evidencia, *supra*, no basta determinar la mayor o menor pertinencia y confiabilidad de una declaración que se pretende introducir como evidencia, sino que es menester una determinación en torno al perjuicio potencial que su admisión conllevaría.

## V

*Inadmisibilidad bajo Regla 64(B)(3): Contra interés penal*

Lo anterior se entrelaza para fines de evaluar, finalmente, la contención levantada ante nos por la acusada Santiago Colón de que su declaración jurada podría ser admisible como una contra su interés penal. La Regla 64(B)(3) de Evidencia, *supra*, define así esta excepción:

> Una declaración que al momento de ser hecha *era tan contraria* al interés pecuniario o propietario del declarante o *le sometía al riesgo de responsabilidad* civil o *criminal,* o tendía de tal modo a desvirtuar una reclamación suya contra otro, o creaba tal riesgo de convertirlo en objeto de odio, ridículo o desgracia social en la comunidad, que un hombre razonable en su situación no hubiera hecho la declaración a menos que la creyera cierta. (Énfasis suplido.)

Según el Art. 397 de la antigua Ley de Evidencia, 32 L.P.R.A. ant. sec. 1678, sólo era admisible una declaración contra el interés pecuniario o propio del declarante, y sólo cuando éste había muerto. *Castro v. Hettinger & Co.,* 79 D.P.R. 884, 887 esc. 3 (1957); *Acosta v. Crespo,* 70 D.P.R. 237, 252–254 (1949). Como resultado del proceso evolutivo de nuestro derecho probatorio, la norma sobre declaración contra interés —uniéndose así a la mayoría de otras jurisdicciones— ensanchó su ámbito e incluyó el interés social y pe-

nal, a la par que abrió las puertas a su aceptación en la situación en que el declarante advenga testigo no disponible. La garantía de confiabilidad radica, por supuesto, en que de ordinario nadie hace una declaración que le sujete a algún tipo de perjuicio, a menos que tal aseveración sea cierta. *Pueblo v. Mendoza Lozada*, 120 D.P.R. 815 (1988); Clearly, *op. cit.*, Sec. 279, pág. 825. Por consiguiente, y en términos generales, la declaración de un testigo no disponible, que al momento de hacerla le sujete a riesgo de responder penalmente, podrá ser admisible bajo la Regla 64(B)(3) de Evidencia, *supra. Pueblo v. Mangual Hernández*, 111 D.P.R. 136, 144 (1981).

Discrepamos de la contención levantada por la acusada Santiago Colón de que su declaración ante el Fiscal sea admisible por ser *contra su interés penal*. La experiencia indica que las aseveraciones no suelen acontecer en un estado de pureza, conteniendo elementos disímiles y en ocasiones contradictorios. Las declaraciones contra el interés penal no son una excepción toda vez que pueden contener elementos tanto desfavorables como favorables al declarante, siendo determinante poder decidir cuál de estos dos (2) tipos de elementos predomina. *Pueblo v. Mendoza Lozada*, supra; E.M. Morgant, *Declarations Against Interest*, 5 Vand. L. Rev. 451, 471 (1952). El ejemplo más comentado es aquél en el que el declarante admite la comisión de un delito menor a los efectos de evitar el castigo por uno mayor. En tales circunstancias, será menester examinar si el elemento exculpatorio o encubridor predomina o permea la declaración en general de tal forma que amerite su rechazo como evidencia admisible. Chiesa, *op. cit.*, pág. 357; Notas, *Declaration Against Penal Interest: Standards of Admissibility Under Emerging Mayority Rule*, 56 B.U.L. Rev. 148, 169 (1976); *United States v. Williams*, 738 F.2d 172, 178 (7mo Cir. 1984); *United States v. Evans*, 635 F.2d 1124, 1125–1126 (4to Cir. 1980),

*cert.* denegado 452 U.S. 943 (1981); *State v. Hansen*, 312 N.W.2d 96, 101 (Minn. 1981).

Atisbado el panorama jurídico y examinada en su justa perspectiva la declaración jurada que nos ocupa, podemos igualmente descartar —como lo hizo el foro de instancia— su admisibilidad bajo la excepción de declaración contra interés penal. Como antes indicáramos, de su faz la misma posee elementos que tienden, más bien, no tan sólo a inculparla por un delito menor (homicidio) en contraste con aquél por el cual hubiera podido responder (asesinato), sino que además levanta eximentes de responsabilidad penal (legítima defensa; caso fortuito), los cuales le colocan en el umbral de las expresiones en beneficio propio sobre los elementos que le sujetan a responsabilidad penal. Ello es indicativo y reflejo de su actitud mental al prestar su declaración.

En estricta lógica, en casos de declaraciones contra interés al igual que con otras excepciones, la atención debe centralizarse en el estado mental del declarante ante las circunstancias que supuestamente le instan a decir la verdad y, por ende, el estándar del hombre razonable sería irrelevante. Por supuesto, este no es el caso: el estándar normal es aquel existente en la Regla 804(b)(3); "un hombre razonable no hubiese hecho la declaración a menos que creyera que era cierta". Dificultades para demostrarlo, las probabilidades e indisponibilidad del declarante son factores que favorecen el estándar aceptado. *Sin embargo, apenas puede dudarse que las declaraciones de un declarante que revelen ostensiblemente su estado mental pueden recibirse y en un caso apropiado, prevalecer.*

A menudo se establece que la excepción requiere establecer que no existe razón para mentir. Esto es demasiado abarcador, y la limitación puede probablemente entenderse mejor, meramente como una cualificación de que *aun cuando, de un lado una declaración pueda ser contra interés, si aparece que el declarante tuvo algún motivo, bien sea en interés propio o por algún otro motivo que lo mueva a falsear los hechos, debe excluirse la declaración.* (Traducción nuestra, énfasis suplido

y escolios omitidos.) Cleary, *op. cit.*, T. 10, Cap. 27, Sec. 279(d), pág. 827.

## VI

*Aspecto constitucional*

La declaración jurada de la acusada Santiago Colón no es admisible bajo ninguna de las excepciones discutidas a la regla general de exclusión de prueba de referencia. En las circunstancias presentes, el único camino que hace viable su admisibilidad es el trazado en la Regla 63 de Evidencia, *supra*. Ello, naturalmente, conlleva una renuncia a su derecho a no incriminarse y que declare en el juicio. *Pueblo v. De Jesús Ayuso*, supra; *Pueblo v. Esteves Rosado*, supra, págs. 337–338; *Pueblo v. Hernández Osorio*, supra, pág. 193. Esa alternativa, sin embargo, no puede entenderse como un menoscabo o perjuicio a su derecho constitucional de no declarar.

Bajo las cláusulas del debido proceso de ley y de comparecencia compulsoria de testigos, un acusado tiene derecho a declarar como testigo en su propia defensa sin que se le impongan limitaciones irrazonables a su testimonio en el tribunal. *Rock v. Arkansas*, 483 U.S. 44 (1987). En su correcta dimensión, se trata justamente de que el acusado no sólo tiene derecho constitucional a mantener silencio sino también a declarar por propia voluntad. *Pero es patentemente erróneo invocar el derecho a declarar para fundamentar la admisión de prueba de referencia cuando el acusado precisamente tiene la oportunidad y el derecho de declarar.*

Sostener el criterio del ilustrado foro de instancia conllevaría que el Estado debe sufrir una consecuencia *adicional e irrazonable* por el ejercicio del derecho del acusado *a no declarar*. Este podría presentar libremente cualquier declaración de referencia que hubiera hecho a su favor antes del juicio sin que el Fiscal tuviera oportunidad alguna en el tri-

bunal de contrainterrogarlo sin el escudo de autoincriminación, escudo que ya lo protegió en la oficina de ese funcionario.

El dictamen de instancia es jurídicamente erróneo y representa un desbalance irrazonable e inaceptable en la búsqueda de la verdad en los procedimientos judiciales. En modo alguno enerva la defensa de derechos constitucionales de la acusada. No puede prevalecer.

—O—

Opinión concurrente emitida por el Juez Asociado Señor Alonso Alonso.

En conformidad con la reserva que se hiciera en la resolución que dispuso sobre el recurso de epígrafe y con lo dispuesto por el Reglamento de este Tribunal, emito esta opinión concurrente.

Concurro con el Tribunal en su decisión de revocar la resolución emitida por el Tribunal Superior de Puerto Rico, Sala de San Juan.

La naturaleza del proceso investigativo dentro de un proceso criminal y las consideraciones *conceptuales y prácticas* que conllevan los planteamientos ante nos requieren tal curso decisorio.

La declaración jurada prestada por la recurrida ante el Ministerio Público es prueba de referencia en conformidad con lo dispuesto por la Regla 60(C) de Evidencia, 32 L.P.R.A. Ap. IV. No reconocerlo así *desnaturalizaría* el proceso investigativo con consecuencias adversas tanto para el Estado como para los ciudadanos que son objeto de una investigación criminal. Veamos.

En autos no están presentes las circunstancias que configuran las excepciones a la regla que prohíbe la admisión de prueba de referencia en el juicio.

Primero: Si bien la acusada es una "testigo no disponible" conforme la Regla 64(A)(1) de Evidencia, 32 L.P.R.A. Ap. IV,

a ésta no le es de aplicación la excepción provista por la Regla 64(B)(1) de Evidencia, 32 L.P.R.A. Ap. IV, en lo referente a deposiciones. Una declaración jurada, aun tomada bajo las circunstancias del caso de autos, no es una deposición. Véase Regla 94 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Además, la referida Regla 64(B)(1) de Evidencia, al referirse a testimonio anterior, cualifica el "tener la oportunidad de contrainterrogar" a que sea "con un *interés o motivo similar al que tuvo en la vista*" en que se intenta introducir como evidencia dicho testimonio anterior.

En la etapa investigativa del caso, el Ministerio Público no tiene una motivación "similar" para contrainterrogar a los sospechosos como la que tiene en el juicio para contrainterrogar a los acusados. En la jurisdicción federal se ha sostenido consistentemente "que debe excluirse el testimonio anterior cuando bajo las circunstancias del caso, no existe motivación suficiente para contrainterrogar cabalmente en la ocasión anterior". E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1985, Vol. I, Cap. VIII, pág. 341. Véase, además, *United States v. Franklin*, 235 F. Supp. 338, 341 (D.C. 1964).

Por ello se explica que generalmente se admite la declaración anterior prestada en vista preliminar. *California v. Green*, 399 U.S. 149 (1970); *Ohio v. Roberts*, 448 U.S. 56 (1980); *Pueblo v. Ríos Nogueras*, 111 D.P.R. 647 (1981). En esa etapa, el deber del Ministerio Público de presentar prueba sobre todos los elementos del delito para lograr una determinación afirmativa de causa probable para acusar (*Pueblo v. Rivera Alicea*, 125 D.P.R. 37 (1989)), *es una motivación suficiente* para contrainterrogar cabalmente al imputado. Sin embargo, en la declaración que se toma en la etapa investigativa el "énfasis no recae en la precisión, sino en la revelación de otras pistas que permitan adelantar la investigación". *Pueblo v. Ríos Nogueras*, 114 D.P.R. 256, 263

(1983). No hay, pues, la motivación suficiente para contrainterrogar provista por la regla.

Segundo: Tampoco es de aplicación la Regla 64(B)(3) de Evidencia, 32 L.P.R.A. Ap. IV, que establece la excepción de una declaración contra interés penal. La declaración en autos no era *"tan contraria* al interés pecuniario o propietario del declarante o le sometía al riesgo de responsabilidad civil *o criminal"*. Tan es así, que la defensa de la imputada interesa que se admita en evidencia dicha declaración, pues entiende que le favorece y no que le perjudica.

Tercero: Tampoco es de aplicación la excepción que dispone la Regla 64(B)(5) de Evidencia, 32 L.P.R.A. Ap. IV, la llamada "cláusula residual", para atender situaciones no previstas. En autos se trata precisamente de una situación prevista. Una cláusula residual dispuesta por vía de excepción no puede tener el efecto de que se convierta en una norma general.

Si hoy una declaración jurada tomada en presencia de los abogados de la defensa, bajo juramento y con la "oportunidad del fiscal de contrainterrogar", tuviera suficientes garantías circunstanciales de confiabilidad para ser admisible en evidencia a favor de la acusada, mañana esa declaración jurada podría alegarse que es inexpugnable, incluso en cuanto a cualquier admisión incriminatoria e involuntaria hecha por el acusado, cuando sea el Fiscal quien la presente en su contra. *Cf. Pueblo v. Pellot Pérez*, 121 D.P.R. 791 (1988); *Pueblo v. Ramos y Álvarez*, 122 D.P.R. 287 (1988). Todo ello a pesar de que cuando el sospechoso decida declarar en dicho procedimiento la defensa no puede objetar las preguntas sugestivas e incriminantes que pueda hacer el Fiscal y de que no existe un récord donde queden "perpetuadas" tales objeciones. En dicho procedimiento, ni siquiera se dan las garantías que ofrecen los procedimientos ante un Gran Jurado federal. *Cf. United States v. West*, 574 F.2d 1131 (4to Cir. 1978); *United States v. Garner*, 574 F.2d 1141 (4to Cir. 1978); *Uni-*

*ted States v. Henry*, 448 F. Supp. 819 (D. N.J. 1978); *United States v. Gutierrez*, 559 F.2d 1278 (5to Cir. 1977).

Cuarto: Permitir la admisión de la declaración jurada de autos desvirtuaría el propósito y la naturaleza del proceso investigativo criminal. Por su propósito y sentido, la toma de declaraciones a sospechosos y testigos va dirigida a establecer un mecanismo de descubrimiento de prueba que, al lograr la revelación de otras pistas, permita adelantar la investigación criminal. La utilización posterior de dichas declaraciones para impugnar la credibilidad de los testigos o del acusado, o para probar admisiones del acusado, no desvirtúan el propósito principal de este procedimiento.

De ordinario, dicho procedimiento es *ex parte*. No reconocerlo así implicaría adicionar un eslabón adversativo al proceso criminal. Conllevaría que cuando se den las circunstancias de autos se transfigure la naturaleza *ex parte* del procedimiento investigativo en adversativo, pero sin que exista un árbitro imparcial para dilucidar conflictos sobre si la declaración es o no exculpatoria, si el Fiscal puede o no hacer determinada pregunta, entre otras. Todo ello con el propósito de depurar en esa etapa cualquier conflicto evidenciario que pudiera surgir posteriormente en la etapa del juicio. Tal procedimiento adversativo en la etapa investigativa tendría un efecto paralizante sobre el proceso de investigación criminal.

Por las razones expuestas, concurro.

—O—

Opinión disidente emitida por el Juez Asociado Señor Rebollo López, a la cual se unen la Juez Asociada Señora Naveira de Rodón y el Juez Asociado Señor Hernández Denton.

A petición del Procurador General de Puerto Rico revisamos, mediante el trámite de mostración de causa, una re-

solución emitida por el Tribunal Superior de Puerto Rico, Sala de San Juan, durante el proceso que ante Jurado actualmente se celebra en dicha Sala contra la recurrida Marisol Santiago Colón por los delitos de homicidio voluntario e infracción al Art. 4 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 414. Mediante la mencionada resolución, dicho foro[1] determinó que era *admisible en evidencia* el "testimonio" o declaración que ante un representante del Ministerio Fiscal había prestado bajo juramento la recurrida en la etapa de la investigación del caso. Razonó el tribunal de instancia al así decidir, en síntesis, que habiendo ejercitado la recurrida su derecho constitucional a no declarar, ella era a todos los fines legales un "testigo no disponible" conforme las disposiciones de la Regla 64(A)(1) de Evidencia, 32 L.P.R.A. Ap. IV, y que la "declaración" prestada, en vista de las circunstancias que rodearon la toma de la misma, era admisible bajo cualquiera de las Reglas 64(B)(1), 64(B)(5) o 65(W) de las citadas Reglas de Evidencia, 32 L.P.R.A. Ap. IV.

A diferencia de la mayoría de los integrantes del Tribunal, somos del criterio que la resolución recurrida debe ser confirmada. Veamos por qué.

## I

El día 5 de julio de 1989 la recurrida Marisol Santiago Colón, en el hogar que compartía con sus pequeños hijos, le dio muerte a su esposo consensual Samuel Llinas Torres con un cuchillo de cocina. La agresión que desembocó en la muerte de éste, alegadamente ocurrió en medio de una discusión y golpiza que el mencionado ciudadano le proporcionaba a la recurrida. Luego de completada la investigación por la Policía de Puerto Rico y la Fiscalía de San Juan, el

---

[1] Hon. Elpidio Batista Ortiz, Juez.

Fiscal a cargo de la investigación del caso citó a la recurrida para que ésta compareciera a la Fiscalía el día 19 de julio de 1989. Ella así lo hizo asistida de abogado. El Fiscal Manuel Núñez Corrada, luego de hacerle a la recurrida las advertencias de ley correspondientes, le pidió a ésta que relatara lo ocurrido en sus propias palabras. Terminado el relato, la recurrida fue sometida por el Fiscal Núñez Corrada a un *incisivo interrogatorio*, el cual ésta contestó. Lo allí sucedido fue plasmado en varias cuartillas de un *papel formato* que provee el Departamento de Justicia para la toma de declaraciones juradas. Luego de terminada la "entrevista", el Fiscal Núñez Corrada procedió a "someter el caso" ante la consideración de un magistrado para la correspondiente determinación de causa probable para arresto.

Determinada causa probable para acusar por los delitos de homicidio voluntario e infracción al Art. 4 de la Ley de Armas de Puerto Rico, *supra*, y radicados los correspondientes pliegos acusatorios, el caso fue señalado para el acto del juicio en la Sala que preside el Hon. Elpidio Batista Ortiz, Juez del Tribunal Superior de Puerto Rico, Sala de San Juan. Seleccionado y juramentado el panel de jurados que interviene en el caso como "juzgador de los hechos", el Estado procedió a presentar la prueba que entendió necesaria y procedente para sostener las acusaciones radicadas. *Merece destacarse el hecho de que el Pueblo no presentó en evidencia la declaración que bajo juramento había prestado la recurrida ante el Fiscal Núñez Corrada.*

Sometido el caso por el Estado, la defensa anunció que no obstante el hecho de que la recurrida reclamaba el derecho constitucional a no declarar como testigo durante el juicio, ofrecía en evidencia la declaración que bajo juramento ella había prestado ante el Fiscal Núñez Corrada. El Ministerio Fiscal se opuso. El tribunal de instancia, como expresáramos anteriormente, determinó que dicha declaración era admisible en evidencia. El Estado acudió, vía *certiorari*, ante este

Tribunal en revisión de dicha resolución. Le concedimos término a la recurrida para expresarse respecto a la controversia planteada. Así lo hizo mediante una *excelente comparecencia* suscrita por la División de Apelaciones de la Sociedad para Asistencia Legal.

En el día de hoy una mayoría de los integrantes del Tribunal revoca la resolución recurrida. Disentimos. Veamos por qué.

## II

El Art. II, Sec. 11, de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1, ed. 1982, pág. 308, dispone que:

> Nadie será obligado a incriminarse mediante su propio testimonio y el silencio del acusado no podrá tenerse en cuenta ni comentarse en su contra.

Este *fundamental* precepto constitucional que le garantiza a todo ciudadano el *derecho* a declarar o no declarar durante el proceso criminal que contra él siga el Estado, tiene su origen en la *presunción de inocencia* que cobija a toda persona que es acusada de la supuesta comisión de un delito en nuestra jurisdicción. *Pueblo v. Esquilín París,* 98 D.P.R. 505, 510 (1970). Debe quedar meridianamente claro que, aun cuando la Regla 23 de Evidencia de 1979 (32 L.R.R.A. Ap. IV) establece que "[u]n acusado en una causa criminal tiene *el privilegio* de no ser llamado como testigo y no declarar" (énfasis suplido), *estamos ante un derecho, y que si un imputado de delito, en el ejercicio de ese derecho, decide no declarar, ese hecho no puede utilizarse en su contra.* Véanse: *Pueblo v. González Colón,* 110 D.P.R. 812, 818–819 (1981); E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia,* San Juan, Pubs. J.T.S., 1988, Vol. I, Cap. VIII, pág. 108. Es por ello que no podemos pasar por alto, y debemos rechazar enérgicamente, la aseveración del Procurador General de

Puerto Rico a los efectos de que la acción de la recurrida constituye una "estratagema" de su parte. Debe quedar claro que el ejercicio de un derecho constitucional por parte de un ciudadano nunca puede ser catalogado como tal.

Debemos decidir, sin embargo, si le asiste la razón a dicho funcionario en su planteamiento central de que el testimonio o declaración extrajudicial que ante el representante del Ministerio Fiscal prestara la recurrida Santiago Colón no debe ser admitido en evidencia durante el proceso criminal al que ella está siendo sometida por razón de que el mismo constituye "prueba de referencia".

Como es sabido, la Regla 60(C) de Evidencia, 32 L.P.R.A. Ap. IV, define "prueba de referencia" como aquella "declaración aparte de la que hace el declarante al testificar en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado". No hay duda que la declaración o testimonio en controversia constituye, prima facie, prueba de referencia: la misma fue prestada extrajudicialmente y dicho testimonio se ofrece para probar la verdad de lo allí aseverado, esto es, que la recurrida Santiago Colón actuó en legítima defensa de su vida al darle muerte a su esposo consensual.

Debemos, entonces, determinar si no obstante constituir dicha declaración o testimonio "prueba de referencia", la misma es admisible en evidencia bajo alguna de las *excepciones* que a esos efectos contemplan las Reglas de Evidencia. Al igual que el tribunal de instancia, contestamos en la afirmativa. Habiendo decidido la recurrida Santiago Colón —en el ejercicio válido del derecho que le concede nuestra Constitución y del "privilegio" que le conceden las Reglas de Evidencia— no tomar la silla testifical como testigo en su propia defensa, ella se convirtió, a todos los fines legales per-

tinentes, en el "testigo no disponible" que contempla la Regla 64(A)(1) de Evidencia, *supra*.(²)

Dados los hechos particulares del caso, los cuales analizaremos más adelante en detalle, procede que consideremos la posibilidad de la aplicación al caso de las disposiciones de la Regla 64(B) de Evidencia, subincisos (1) y (5), los cuales, en lo pertinente, disponen que:

(B) Cuando el declarante *no está disponible como testigo*, es admisible como excepción a la regla de prueba de referencia:

(1) *Testimonio anterior*: Un testimonio dado como testigo en otra vista *o una deposición tomada conforme a derecho* del mismo u otro procedimiento, *si es ofrecido contra una persona que* en la ocasión en que se hizo la declaración ofreció la misma para su beneficio o *tuvo la oportunidad de contrainterrogar al declarante con un interés y motivo similar al que tiene en la vista.*

. . . . . . . . .

(5) *Otras excepciones*: Una declaración con suficiente garantía circunstancial de confiabilidad si se determinare que:

(i) tiene mayor valor probatorio, en relación al punto para lo que se ofrece, que cualquier otra evidencia que el proponente pudiera conseguir mediando esfuerzo razonable y

(ii) el proponente notificó a la parte contra quien la ofrece, con razonable anterioridad, su intención de ofrecer en evidencia tal declaración informándole sobre los particulares de ésta, incluyendo nombre y dirección del declarante. (Énfasis suplido.)

¿Resulta ser admisible en evidencia, bajo alguno de los antes transcritos incisos de la Regla 64(B) de Evidencia, *supra*, el testimonio o declaración que prestara la recurrida Santiago Colón ante el Fiscal Manuel Núñez Corrada el día

---

(²) Dicha disposición reglamentaria, como es sabido, incluye en esta categoría a aquel testigo que "[e]stá exento o impedido de declarar *por razón de un privilegio reconocido en esta regla* en relación al asunto u objeto de su declaración". (Énfasis suplido.) 32 L.P.R.A. Ap. IV, R. 64(A)(1).

19 de julio de 1989? La contestación a la referida interrogante exige un análisis de los *hechos específicos* del presente caso y, sobre todo, de las *circunstancias particulares* que rodearon la toma de la declaración, por parte del Ministerio Público, a la recurrida.

No puede perderse de vista que los hechos que desembocaron en la muerte de Samuel Llinas Torres ocurrieron el día 5 de julio de 1989. La investigación del caso por parte de la Policía de Puerto Rico y la Fiscalía de San Juan comenzó de inmediato. Ya para el 19 de julio de 1989, la Fiscalía había concluido su investigación y estaba lista para someter el caso a un magistrado para la determinación de causa probable para arresto. Ello se infiere del hecho de que ese mismo día el caso efectivamente fue sometido ante la consideración de un magistrado.

No obstante lo anteriormente expresado, y por razones que no han sido expresadas, el Ministerio Fiscal entendió que debía *"perpetuar"* el testimonio de la recurrida Santiago Colón antes de someter el caso. Ello resulta un tanto curioso por cuanto que no hay duda que el testimonio —tipo admisión— no le resultaba necesario al Estado para proceder judicialmente contra ésta. De hecho, el Estado *no* utilizó durante el juicio que actualmente está pendiente ante el tribunal de instancia la referida declaración.

Con el aparente propósito, repetimos, de *perpetuar* el testimonio de la recurrida, el Fiscal la cita para que compareciera a Fiscalía a prestar declaración. Acudió ella a dicha cita acompañada de abogado. Resulta necesario destacar el hecho de que en ese momento, por razón de la secretividad que cobija al expediente investigativo del Ministerio Fiscal, la recurrida Santiago Colón *desconocía totalmente* la evidencia con que contaba el Ministerio Fiscal. Aún así, y pudiendo ejercer el derecho constitucional contra la autoincriminación, la recurrida voluntariamente contestó todas y cada una de las preguntas que le hizo el Fiscal Núñez Corrada, decla-

ración o testimonio que ciertamente la sometía al riesgo de responsabilidad criminal.

Una lectura de la declaración tomada en dicho día —en el formato de declaración jurada— resulta altamente interesante. Luego de las correspondientes advertencias de ley, el Fiscal le pide a la recurrida Santiago Colón que relate en sus propias palabras lo sucedido el 5 de julio de 1989. Con posterioridad a ella así hacerlo, el Fiscal somete a la recurrida a un fuerte y pensado contrainterrogatorio. *Un análisis de las referidas preguntas —diez y nueve en total— demuestra que cada una de ellas perseguía un propósito en particular.* En primer lugar, el Fiscal intenta, y logra, negar la posibilidad de que la recurrida actuó en defensa de sus hijos. En segundo lugar, intenta establecer el móvil de lo sucedido al confrontar a la recurrida con distintas situaciones que, según él, demostraban que la recurrida actuó motivada por celos. En tercer lugar, el Fiscal intenta demostrar por sus preguntas que la recurrida logró que el occiso regresara a la casa, la cual había abandonado, con el propósito de matarlo. En cuarto lugar, confronta a la recurrida con el hecho de que ella no mostraba evidencia en su cuerpo de haber sido víctima de golpe alguno por el occiso, ello con el obvio propósito de demostrar que era falsa su versión de que había actuado en legítima defensa de su vida. En fin, no se trata de una declaración jurada de las que común y corrientemente se toman en las fiscalías. Las preguntas hechas demuestran un interrogatorio preconcebido, producto el mismo de un plan fríamente calculado por el Fiscal con el propósito de destruir de antemano la teoría de defensa propia que el Fiscal sabía que en algún momento posterior presentaría la recurrida.[8]

---

[8] A los fines de una mejor comprensión de lo expuesto respecto a las preguntas hechas por el Fiscal a la recurrida, incluimos copia de la referida declaración como apéndice de la ponencia.

Estamos conscientes del hecho de que no nos encontramos ante la situación clásica de la toma de una deposición, situación específicamente regulada por las disposiciones de la Regla 94 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Debe quedar meridianamente claro, en adición, que tampoco sostenemos que toda declaración jurada que tome un fiscal durante la etapa investigativa de un delito cualifica como, o equivale a, una deposición bajo las disposiciones de la citada Regla 64(B)(1) de Evidencia. Lo que sí sostenemos es que las circunstancias que rodearon la toma de la declaración a la recurrida Santiago Colón en el presente caso *demuestran que estuvieron presentes, y se cumplieron, con todas las garantías fundamentales que se exigen en la toma de una deposición.*

En primer lugar, los hechos demuestran que el propósito del Fiscal Núñez Corrada al citar a la recurrida Santiago Colón a sus oficinas fue el de "descubrir" de antemano la versión de ésta sobre los hechos ocurridos y el de "perpetuar" el mismo para propósitos de impugnación en ocasión posterior, digamos durante el juicio, de ésta decidir tomar la silla testifical en su propia defensa. Ello resulta obvio cuando se considera, *repetimos,* que esa declaración no era necesaria para someter y sostener el caso del Estado; la mejor prueba de ello es que dicha declaración nunca ha sido utilizada por la Fiscalía a lo largo de todo el procedimiento.

En segundo lugar, ambas partes estuvieron representadas por abogado durante la toma de la declaración. En tercer lugar, la declaración prestada fue bajo juramento y a solicitud del Ministerio Fiscal. Por último, el representante del Estado no sólo tuvo la oportunidad de contrainterrogar a la recurrida, sino que efectivamente lo hizo. Es posible, como alega el Procurador General en su recurso, que el representante del Estado no le hiciera a la recurrida el día 19 de julio de 1989 todas las preguntas que podría hacerle si ésta ocupa la silla testifical durante el juicio. Ello *no* implica que al

Estado se le haya violado el derecho que tiene, como parte en un procedimiento judicial, a confrontarse con los testigos de la parte contraria, derecho garantizado por el debido procedimiento de ley. Lo importante es que tuvo la oportunidad de hacerlo el día 19 de julio de 1989 (*Ohio v. Roberts*, 448 U.S. 56 (1980)) y que efectivamente lo hizo; hecho que hace que desaparezca la objeción jurídica a la admisión de esa evidencia por constituir la misma prueba de referencia. Por último, no debemos olvidar que, después de todo, el verdadero recipiente o beneficiario del derecho a "carearse" con los testigos en su contra, consagrado en la Carta de Derechos de nuestra Constitución, lo es el imputado de delito y no el Estado. Véase Const. E.L.A., *supra.*

Un análisis objetivo de la situación nos obliga a reconocer, sin embargo, que no nos encontramos ante la figura de la "deposición", tal y como la misma es contemplada y regulada por la Regla 94 de Procedimiento Criminal, *supra*. La terminología en que está concebida la citada disposición reglamentaria no permite otra conclusión jurídica.[4] No constituyendo la declaración aquí en controversia una "deposición", la misma no es admisible en evidencia bajo la Regla 64(B)(1) de Evidencia, *supra*. Ello no obstante —y según surge del examen objetivo y sereno que anteriormente hiciéramos de los hechos y circunstancias del presente caso— resulta ser un hecho indiscutible que en la toma de la declaración que bajo juramento prestara la recurrida Santiago Colón se cumplieron, en términos prácticos, con todos los requisitos y las

---

[4] La citada Regla 94 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, en lo pertinente, dispone que:

"(a) *Fundamentos*; *testigo bajo arresto*. Por circunstancias excepcionales y en interés de la justicia, *el tribunal podrá ordenar* en cualquier momento *después de haberse presentado la denuncia o acusación*, a moción de cualquiera de las partes con notificación a las demás partes, *que el testimonio del testigo de la parte solicitante* se tome por deposición . . . ." (Énfasis suplido.)

garantías que justifican la admisibilidad de una deposición al amparo de la antes mencionada Regla 64(B)(1) de Evidencia.

A esos efectos, no debe perderse de vista que la "base" para la admisión de prueba de referencia, como excepción a la regla general de exclusión, precisamente radica en la existencia de circunstancias que indiquen confiabilidad. *United States v. Williams*, 571 F.2d 344, 350 (6to Cir. 1978); Chiesa, ante, pág. 360. Por otro lado, debe mantenerse presente que la razón principal para el requisito de garantías circunstanciales de confiabilidad respecto a prueba de referencia tiene su razón de ser en el intento de subsanar por ese medio la ausencia de un contrainterrogatorio eficaz referente a esa prueba. 5 *Wigmore on Evidence* Sec. 1422 (1974); Chiesa, ante, pág. 371; *U.S. v. Workman*, 860 F.2d 140, 144 (4to Cir. 1988).

En la situación específica ante nuestra consideración, dentro de las garantías circunstanciales de confiabilidad que permean la declaración prestada por la recurrida Santiago Colón, precisa y específicamente se destaca el hecho de que el representante de la parte contra quien hoy se ofrece la declaración en el juicio —el Estado— *tuvo la oportunidad de interrogar a su antojo a la declarante*. De manera que, desde el punto de vista de la doctrina imperante hoy día sobre la materia, *no* existe razón jurídica válida alguna para denegar la admisibilidad de la declaración aquí en controversia por cuanto la misma está rodeada de amplias garantías de confiabilidad.

Nos encontramos, en consecuencia, ante una situación de "primera impresión", no contemplada específicamente por las excepciones tradicionales a la norma general de inadmisibilidad de prueba de referencia, *la cual situación debería de motivar creativamente a todos los integrantes de este Tribunal a buscarle a la misma una solución no sólo correcta desde el punto de vista técnico-jurídico, sino que justa.* Como certeramente expresara este Tribunal en *Correa Ne-*

*grón v. Pueblo*, 104 D.P.R. 286, 291–292 (1975), "[l]os tecnicismos no pueden impedir que atendamos el clamor de quien busca justicia. Cuando la ley no provee el camino, la justicia lo hace".

Con ese fin como nuestro norte, consideramos la posibilidad de que la declaración aquí en controversia sea admisible en evidencia al amparo de las disposiciones de la denominada "cláusula residual" de la Regla 64(B) de Evidencia, esto es, bajo el *inciso (5)* de la citada disposición reglamentaria. Aceptado el hecho de que con motivo de que la recurrida reclamara su derecho constitucional a no declarar ella se convirtió en un "testigo no disponible", *tres* son los requisitos adicionales que exige el citado inciso (5) de la Regla 64(B), *supra*, para que una declaración como la aquí en controversia pueda ser admitida en evidencia al amparo de sus disposiciones, *a saber*: (1) que la declaración esté provista de "suficiente garantía circunstancial de confiabilidad"; (2) que la misma tenga "mayor valor probatorio, en relación al punto para lo que se ofrece, que cualquier otra evidencia que el proponente pudiera conseguir mediando esfuerzo razonable", y (3) que el "proponente notificó a la parte contra quien la ofrece, con razonable anterioridad, su intención de ofrecer en evidencia tal declaración informándole sobre los particulares de ésta, incluyendo nombre y dirección del declarante".

Resulta *obvio* que la declaración jurada que pretende la defensa introducir en evidencia en el presente caso cumple con todos y cada uno de dichos requisitos.

Como hemos demostrado anteriormente hasta la saciedad, la declaración aquí en controversia está permeada de amplias garantías de confiabilidad. En la toma de dicha declaración no sólo se cumplieron con todas las garantías y requisitos que se exigen en la toma de una deposición, incluyendo el requisito básico y crucial del contrainterrogatorio, sino que el ilustrado juez de instancia, en la resolución recurrida, expresamente hizo constar que la misma ha quedado

"corroborada casi en su totalidad con la prueba presentada por el Ministerio Público en el caso . . .". Anejo IV, pág. 13. En cuanto al segundo de los requisitos, basta con señalar que el "valor probatorio" de la referida declaración resulta único por cuanto, habiendo reclamado la recurrida su derecho constitucional a no declarar, la declaración jurada resulta la única evidencia con que ella cuenta en su defensa respecto al punto en controversia, esto es, su responsabilidad penal. Por último, y respecto al tercero de los requisitos del citado inciso (5), tenemos que el Ministerio Fiscal *obviamente* tenía conocimiento, con anterioridad al juicio, del contenido de la declaración, así como que el Fiscal de Sala tenía conocimiento de que la recurrida se proponía presentar en evidencia durante el juicio la referida declaración. Así lo conluyó expresamente el tribunal de instancia en la resolución objeto del presente recurso.

Demostrado a cabalidad que la declaración en controversia cumple satisfactoria y plenamente con los requisitos establecidos por el inciso (5) de la Regla 64(B) de Evidencia, *supra*, resulta, cuando menos, sorprendente e inexplicable la posición de la mayoría del Tribunal a los efectos de que dicha declaración no es admisible en evidencia a la luz de las disposiciones de la citada disposición reglamentaria.

Advertimos, y reconocemos, que al hoy asumir la posición de que la referida declaración en efecto es admisible bajo la Regla 64(B)(5) de Evidencia, *supra*, realmente "no estamos descubriendo a América". Este Tribunal —en relación con una situación, que aun cuando no igual, es similar— hace más de un lustro expresó, en *Pueblo v. Ríos Nogueras*, 114 D.P.R. 256, 264 (1983), que:

> No obstante, en algunas situaciones excepcionales, una declaración anterior prestada durante la etapa investigativa por un testigo no disponible el día del juicio es admisible bajo la Regla 64(B)(5) de Evidencia si existen suficientes garantías circunstanciales de su confiabilidad, aunque no hubiera habido oportunidad de contrainterrogarlo.

Si la situación de hechos ante nuestra consideración —en donde se ofrece en evidencia una declaración prestada bajo juramento, tomada la misma en la etapa investigativa del caso por el Fiscal, el cual tuvo amplia oportunidad de interrogar al declarante, quien al ser procesado reclama su derecho constitucional a no declarar y cuya declaración es la única prueba de defensa con que ese acusado cuenta— no cualifica como una "situación excepcional" (*Pueblo v. Ríos Nogueras*, ante), realmente no podemos concebir situación alguna que pueda catalogarse como tal.

Por último, no se debe perder de vista que al interpretar las Reglas de Evidencia hay que tomar en consideración el hecho de si lo estamos haciendo en relación con un asunto penal o uno de índole civil. A esos efectos, resulta pertinente lo expresado en 4 *Weinstein's Evidence* Sec. 803(24)[01], pág. 803-378 (1988):

> By contrast, it has been suggested that a refusal to admit hearsay evidence offered on behalf of a criminal defendant *amounts to a denial of due process if the declarant is unavailable and the evidence is reasonably reliable.* (Énfasis suplido.)

Por los fundamentos antes expresados, *y dados los hechos particulares y específicos presentes en el caso*, confirmaríamos la resolución emitida por el foro de instancia admitiendo en evidencia la declaración que bajo juramento prestara la recurrida Santiago Colón ante el Fiscal Manuel Núñez Corrada en la etapa investigativa del caso.

# APÉNDICE A

DJC - 5
Rev. 3-87

ESTADO LIBRE ASOCIADO DE PUERTO RICO
DEPARTAMENTO DE JUSTICIA
OFICINA DE INVESTIGACIONES Y PROCESAMIENTO CRIMINAL '

EL PUEBLO DE PUERTO RICO

VS.                    POR: _____
                                              (Delito)

_____

_____

DECLARACION JURADA DE: __MARISOL SANTIAGO COLON – ESTADO CIVIL: __Soltera__
                                                    (Nombre)

En __Hato Rey, Puerto Rico__, a __19__ de __julio__ de 19 _89_.
        (Pueblo)                                              (Fecha)

Yo, __Marisol Santiago Colón__, vecino de __Río Piedras, PR__,
              (Nombre)                                  (Pueblo)

con residencia en __Cond. El Trebol, Edif. B Apto. 204__ y teléfono Núm. _____,
                        (Dirección Exacta)                                      (Teléfono Residencial)

que trabajo para _____ con dirección en _____
                        (Nombre del Patrono)                        (Dirección del Patrono)

_____ con teléfono Núm. _____, Núm. Seguro Social
                                          (Teléfono del Trabajo)

__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__ número de licencia de conducir _____ y de __30__ años de
edad, ante el Fiscal comparezco y, previa las advertencias de ley que me han sido hechas, espontáneamente bajo juramento declaro

FISCAL:   Que soy el Fiscal Manuel Núñez Corrada y estoy realizando una investiga-
          ción relacionada con la muerte de Samuel Llinas Torres y usted
          está aquí como sospechoso o presunto acusado y antes de hacerle
          cualquier pregunta quiero advertirle sobre sus derechos.
          1- Usted tiene el derecho a permanecer callado y a no declarar.
          2- Cualquier cosa que usted diga, puede ser usada en su contra.
          3- Usted tiene derecho a hablar con un abogado para que le
          aconseje antes de yo hacerle cualquier pregunta y además dicho
          abogado puede acompañarlo durante el interrogatorio.
          4- Si usted no puede pagar un abogado le conseguiré uno
          antes de interrogarlo, libre de costo alguno, si así lo desea.
          5- Si usted se decide a contestar mis preguntas sin estar
          asistido de un abogado, pueden egarse a contestar cualquier
          pregunta y en cualquier momento puede dejar de contestar y
          solicitar asistencia legal.
          6- Su declaración tiene que ser libre, voluntaria y espon-
          tanea y no se puede ejercer ninguna presión, ni amenaza, ni
          coacción o intimidación para obligarlo a declarar.

Fiscal    ¿Ha entendido lo que le he explicado?

Testigo   Sí

Fiscal    ¿Desea usted declarar?

Testigo   Sí

Declaración Jurada Núm. _____    _____
                                                      (Firma del Declarante)

Jurada y suscrita ante mí hoy_____ de _____ de 19 _____.

_____          _____
(Nombre del Taquígrafo que investiga)          (Firma y Sello del Fiscal que toma el juramento)

                                         _____
                                         Fiscalía o División a la cual está adscrito

# APÉNDICE A

CONTINUACION DE LA DECLARACION JURADA DE: _____
(Nombre)

Fiscal: Me he percatado, que en el día de hoy usted esta acompañada por dos personas, por favor quienes son y cuales son sus nombres?

Testigo: Yo sé que los dos son mis abogados y sus nombres son Lcdo. Julio Fontanet Maldonado y Lcdo. Angel Vital Vázquez.

Fiscal: Le pregunto, que fue lo que sucedió el día 5 de julio de 1989

Testigo: El día 5 de julio de 1989, yo llamé a Samuel a su trabajo, como a las ocho menos veinticinco de la mañana, le dije que me trajera dos galones de leche y el dinero, que me faltaba en la cartera, porque el día antes yo le había hecho una querella a él, porque él me había dao y en la pelea el tenía un martillo en las manos y los dos forzamos con el martillo, ahí yo comenzé a llorar y a gritar y mis hijos salieron para fuera en busca de ayuda a los vecinos, pues ahí vino la policía y yo lo denuncie. Vinieron dos policía y una mujer policía yo hablé y le dije que me había agredido y eso y entonces me dieron un papelito, para que fuera al Cuartel el próximo viernes, luego nos entrevistaron a los dos y ese mismo día voy a chequear la cartera, para comprar leche que tenía, no encuentro el dinero, al otro día llamo llamo al trabajo o sea el 5 y le dije que me trajera dos galones de leche y los $50.00 que me faltaban. El mismo día que yo le hize la querella él me envió mi cartera, con la hermana Sara. El me dijo cuando lo llamé trabajo, yo sé que yo ví esos chavos, pero yo no sé nada, entonces el me dice como quiera yo tengo que ir para alla, porque tenemos que hablar sobre la denuncia, pues entonces ahí colgamos y él iba a venir a traerme la leche. Pues como a las 9:00 de la noche él llegó a mi casa con un galón de leche él entró y sentó en una silla, me dijo que qué yo iba a ser sobre la denuncia, entonces yo le dije "todo el tiempo pa lante, porque yo he sufrido mucho" Entonces ahí mismo el se paró y me calló en cima y me calló encima, me dió bofeta, puño y me dió un empujón, que caí al piso de la cocina y me estoy parando y él venia con furia para encima de mí, yo me paré y como lo veia que venía detrás de mí con furia, cuando me estaba parando, en el escurridor había un cuchillo y yo pensé en mis hijos y temía por mi vida, vi el cuchillo y lo agarré ya que el día antes él había cogido un martillo, entonces, cuando agarro el cuchillo tiro la mano hacia atrás y él estaba detrás de mí yo sé que se lo enteré, pero no ví la parte en que se lo enteré, seguí corriendo con el cuchillo en la mano y él seguía detrás de mí. Entonces yo miro para atrás y lo ví caer en el pasillo del piso 11, ahí cuando yo lo ví caer

Declaración Jurada Núm. _____    _____
(Firma del Declarante)

Jurada y suscrita ante mí hoy_____de_____de 19_____.

_____          _____
(Nombre del Taquígrafo que investiga)     (Firma y Sello del Fiscal que toma el juramento)

                                       _____
                                       Fiscalía o División a la cual está adscrito

J 80-06-307—100,000—41—Jul 88—IGPR.

484

## APÉNDICE A

DJC - 5
Rev. 3-87
Hoja Cont.

ESTADO LIBRE ASOCIADO DE PUERTO RICO
DEPARTAMENTO DE JUSTICIA
OFICINA DE INVESTIGACIONES Y PROCESAMIENTO CRIMINAL

CONTINUACION DE LA DECLARACION JURADA DE: _____
(Nombre)

ágina 3

me puse histerica gritando, solté el cuchillo, mi vecina me agarró y me metieron a bañar y enseguida vino la policía. Entonces la policía me preguntaba cosas, me preguntó la edad y todas esas cosas, de ahí me llevaron al cuartel. Luego me llevaron al Hospital ya que me había dado un ataque de histeria en el Cuartel y de allí me llevaron a Salud Mental.

'iscal: Al momento de de usted agarrar el cuchillo, digame si es o no cierto que los niños estaban viendo televisión.

'estigo: Sí estaban viendo televisión.

'iscal: Y usted le enterró el cuchillo en la cocina

'estigo: Sí, porque donde esta el comedor y la cocina es lo mismo, pero fue en la cocina, cerquita del fregadero.

'iscal: Porque usted señala que pensó en sus hijos, cuando sus hijos estaban en una distancia bastante lejos de donde usted se encontraba con su marido-consensual.

'estigo: Bueno porque en días antes el había cogido un martillo y yo lo ví con tanta furia que iba para encima de mí.

iscal: Pero en algún momento él agredió a sus hijos, no solamente en el día de los hechos.

estigo: El a veces me los regañaba mucho, pero no nunca fueron maltratados.

iscal: Lo cierto es que usted tenía celos de que él tenía otra mujer

estigo: Yo lo había visto a él marcado pero para mí yo no sentí celos, simplemente una vez le pregunté.

iscal: Y usted no se sentía molesta porque él tenia unos chupones en el pecho, como signo de caricias.

estigo: Yo le pregunté pero no era tanta molestia.

iscal: Usted no le dijo a él, que si él la abandonaba usted lo mataba.

estigo Nunca.

iscal: Usted fue en el aterior matrimonio suyo, abandonada por su esposo, por razón de otra mujer

estigo No.

iscal: Ya él se había ido de su casa, cuando usted tuvo el incidente, cuando usted tuvo el incidente el 5 de julio.

estigo: Yo sé que él no durmió en casa

Declaración Jurada Núm. _____     _____
                                        (Firma del Declarante)

Jurada y suscrita ante mí hoy _____ de _____ de 19 _____ .

_____          _____
(Nombre del Taquígrafo que investiga)      (Firma y Sello del Fiscal que toma el juramento)

_____
Fiscalía o División a la cual está adscrito

# APÉNDICE A

CONTINUACION DE LA DECLARACION JURADA DE: _____Marisol Santiago Colón__ ``
(Nombre)

Fiscal: Y porqué si él se había ido de su casa el 4 de julio porqué usted lo llamó, el 5 de julio.

estigo: Bueno porque ese día el 4 de julio él se había llevado mi cartera, y el 5 para hablar sobre la denuncia.

iscal: Usted lo dejó entrar a su casa.

estigo: El entró,

iscal: Usted protesto sobre eso

estigo: Bueno no, como yo le había hecho la denuncia, yo le dejé entrar.

iscal: Cuando usted lo apuñaló, él salió primero del apartamento.

estigo: No yo salí primero

iscal: y Porque hay, pisadas de sangre de su apartamento al otro apartamento.

estigo: Porque a mí me cayó sangre de él encima.

iscal: Porque usted se cambio de ropa.

estigo: Bueno, mis vecinos me vieron a mí con sangre y me metieron a bañar.

iscal: Cuantos años lleva usted viviendo con este individuo.

estigo: Como cuatro años.

iscal: Cuanto tiempo hace que ustedes comenzaron a pelear.

estigo: Mucho antes de abril comenzamos a discutir, me daba bofetadas en la cara

iscal: En algunas de esas discusiones usted tuvo que ir a algún dispensario o medico.

estigo: No, me pasaba bien nerviosa llorando.

iscal: Usted había estado en tratamiento psiquiatrico anteriormente

estigo: No.

iscal: Pregunto yo si para los hechos del 4 de julio usted mostraba alguna agresión en su cuerpo y que se lo halla usted notificado a la mujer policía que radicó la querella.

estigo: No recuerdo bien, porque estaba tan nerviosa

Declaración Jurada Núm. _1076_
HORA: _9:00PM_.
Jurada y suscrita ante mí hoy _19_ de _julio_ de 19 _89_ .

L: García
(Nombre del Taquígrafo que investiga)

MARISOL SANTIAGO COLON
(Firma del Declarante)

MANUEL NUÑEZ CORRADA
(Firma y Sello del Fiscal que toma el juramento)

Fiscalía o División a la cual está adscrito

J 20-06 156—20.000 - 29  Jun 87—IGPR